UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
JUAN DELPHIN,

       Petitioner,

                **MEMORANDUM & ORDER**

 -against-

                09 CV 2700

HAROLD GRAHAM, Superintendent
Auburn Correctional Facility,

       Respondent.
-------------------------------------------------X
DEARIE, Chief Judge.

  Petitioner Juan Delphin is currently serving twenty years to life in prison for his participation in the drug-related murder of Louis Rosario. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the application is denied, and the petition is dismissed.

## Background

  In late 1989, Luz Deleon, the common law wife of a drug dealer named Tito, became concerned that Tito's nephew Louis Rosario was trying to take over his business. She asked her boyfriend Marcos Betances to kill Rosario. He refused to kill Rosario himself, but on December 30, 1989, he went to a bar he frequented in Manhattan to find somebody to do the job. Petitioner, who had known Betances for more than twenty years, was at the bar that night, and Betances asked him if he knew a hit man. Petitioner said that he did and paged Pedro DeJesus. DeJesus joined them at the bar, and the three discussed the job. Petitioner loaned Betances a car that could not be traced to them, and Betances and DeJesus drove to Brooklyn to carry out the hit.

Betances and DeJesus spotted Rosario's car outside a pool hall. They waited for him to come out and followed him home. While Rosario sat in his parked car in front of his house, DeJesus shot him several times. DeJesus threw the gun away in a dumpster. Rosario died from internal bleeding. No fingerprints were recovered from Rosario's car or the .45 caliber shell casings found at the scene.

Nine years later, Betances was indicted on federal drug conspiracy charges. After signing a cooperation agreement, he admitted his role in Rosario's murder. Petitioner was subsequently arrested, and on October 5, 1999, he confessed to his participation.

On November 8, 2001, after a jury trial, petitioner was convicted of second-degree murder (New York Penal Law § 125.25(1)). Pursuant to his cooperation agreement, Betances testified for the prosecution. In addition, petitioner's October 5, 1999 statement was admitted into evidence. Keesha Colello, a neighbor of Rosario's who witnessed the shooting, testified for the defense. According to Colello, two men who did not match the description of Betances and DeJesus drove up in a car that did not match the description of the car petitioner loaned them. One of the men argued with Rosario and then shot him.

Petitioner's conviction was affirmed on appeal on February 7, 2006. People v. Delphin, 812 N.Y.S.2d 552 (App. Div. 2006). The Court of Appeals denied leave to appeal on May 9, 2006. People v. Delphin, 6 N.Y.3d 893 (2006). On July 9, 2008, petitioner filed a motion for a writ of error coram nobis. That application was denied on October 21, 2008. People v. Delphin, 865 N.Y.S.2d 565 (2008). The Court of Appeals denied leave to appeal on June 9, 2009. People v. Delphin, 12 N.Y.3d 914 (2009).

**Discussion**

I. Timeliness

Petitioner's application is time-barred. The petition, dated June 12, 2009, was filed approximately three years after petitioner's conviction became final in August of 2006, and almost two years after the expiration of the one-year limitations period. See 28 U.S.C. § 2244(d)(1)(A) (one year limitations periods runs from "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."); Williams v. Artuz, 237 F. 3d 147, 150-51 (2d Cir. 2001) (judgment of conviction becomes final ninety days after the date the Court of Appeals denies leave to appeal).

At the time his conviction became final, petitioner was incarcerated in a New Jersey State prison. He was transferred into the custody of New York authorities on December 21, 2007. Petitioner contends that his petition should be considered timely because he lacked access to necessary legal materials and a bilingual interpreter while housed in New Jersey. He asserts that these obstacles were state-created impediments within the meaning of Section 2244(d)(1)(B) that prevented him from filing his petition before he was transferred into New York. See 28 U.S.C. § 2244(d)(1)(B) (one year limitations period runs from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action.") In addition, he blames state-appointed appellate counsel for failing to assist him in timely filing a petition despite her knowledge of his English language limitations and these impediments. He also contends that a New Jersey Corrections counselor assured him that the limitations period would not begin to run until he was in New York custody.

The obstacles to filing that petitioner cites do not constitute impediments created by state

3

action, nor do they entitle him to equitable tolling. There is no constitutional right to counsel on habeas, see Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Love v. McCray, 413 F.3d 192, 194 n. 1 (2d Cir. 2005), and state-appointed appellate counsel had no obligation to assist petitioner in filing a collateral attack on his conviction. Further, even if petitioner received incorrect advice from a New Jersey Corrections counselor, his appellate counsel informed him, by letter dated May 24, 2006, written in Spanish, that the limitations period would expire one year and ninety days from the denial of leave to appeal by the Court of Appeals.

Courts may equitably toll the limitations period only in the "rare and exceptional circumstance." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). Generally, lack of proficiency in English, pro se status, and lack of legal knowledge and expertise do not constitute "extraordinary circumstances" justifying equitable tolling. See, e.g., Worsham v. West, No. 05 Civ. 530, 2006 WL 2462626, at *2 (S.D.N.Y. Aug. 23, 2006) ("Mere ignorance of the law does not qualify as an extraordinary circumstance warranting equitable tolling in habeas cases."); Doyle v. Yelich, No. 05 Civ. 2750, 2005 WL 2475727, at *2 (E.D.N.Y. Oct. 7, 2005) ("A petitioner's pro se status and ignorance of the law do not warrant equitable tolling."); Ayala v. Fischer, No. 04 Civ. 3404, 2004 WL 2435523, at *1 (S.D.N.Y. Nov. 2, 2004) ("Ignorance of the law and an inability to read or write do not constitute extraordinary circumstances that would justify equitable tolling."); Martinez v. Kuhlmann, No. 99 Civ. 1094, 2000 WL 622626, at *3 (S.D.N.Y. May 15, 2000) (difficulty with English and insufficient legal assistance not "extraordinary"). Moreover, a petitioner must make reasonable efforts to overcome the circumstances to demonstrate the diligence required to be entitled to equitable tolling. See Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008) ("the diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain

4

assistance to mitigate his language deficiency.").

In any case, for the reasons set forth below, none of petitioner's claims warrant habeas relief.

II. Merits

A. Standard of Review

In this action, petitioner attacks (1) the sufficiency of the evidence, (2) comments the prosecutor made during her summation, (3) the trial court's accessorial liability charge, and (4) appellate counsel's effectiveness for failing to challenge the outcome of the Huntley hearing. All of these claims, raised by petitioner on direct appeal and in his motion for a writ of error coram nobis, have been rejected on the merits in state proceedings. Because none of the relevant state court decisions is either contrary to or an unreasonable application of clearly established federal law, habeas relief cannot be granted. 28 U.S.C. § 2254(d) (1) (A writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."); see also Carey v. Musladin, 549 U.S. 70, 74 (2006) (habeas relief available only if state court decision "was contrary to or involved an unreasonable application of this Court's applicable holdings"); Lockyer v. Andrade, 538 U.S. 63, 75 (2003) ("[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous;" it must be "objectively unreasonable").

Petitioner also claims, as he did on direct appeal, that the trial judge committed reversible error by failing to deliver the proper admonishments at the end of the day to the deliberating jury. This claim was rejected by the appellate court as unpreserved—an independent and adequate

state procedural ground. Petitioner has demonstrated neither cause and prejudice, nor that a fundamental miscarriage of justice will result if the claim is not reviewed. Accordingly, this Court cannot reach petitioner's defaulted claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

B. Sufficiency of the Evidence

A habeas petitioner challenging sufficiency bears a "very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (citing Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)). The Court must review the evidence in the light most favorable to the state and must uphold the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); a court "faced with a record of historical facts that supports conflicting inferences *must presume*—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and *must defer* to that resolution." Id. at 326 (emphasis added).

Petitioner specifically challenges the sufficiency of the evidence adduced with respect to his intent. To be guilty of second-degree murder under New York law, an individual must "[w]ith intent to cause the death of another person . . . cause[] the death of such person...." N.Y. Penal Law § 125.25(1), and to be criminally liable as an accessory, an individual must, "acting with the mental culpability required for the commission thereof, . . . solicit[], request[], command[], importune[], or intentionally aid[] . . . [another] person to engage in such conduct." N.Y. Penal Law § 20.00; see also Maldonado v. Scully 86 F.3d 32, 35 (2d Cir. 1996) (state law elements for accessorial liability for murder in the second degree); People v. Cummings, 517

6

N.Y.S.2d 225, 226-27 (App. Div. 1987) (collecting cases on accessorial liability). Thus, for petitioner's conviction to stand, the evidence must have permitted a rational juror to find that he solicited or intentionally aided in the shooting of Rosario, and that he did so with the intent to kill him.

Ample evidence was presented to support the inference that petitioner participated with the requisite intent. Betances testified that when he saw petitioner at the bar, he asked whether he knew anyone who could carry out a hit. Petitioner said that he did and paged DeJesus. When DeJesus arrived at the bar, petitioner introduced him to Betances, and the three talked together about the job. Petitioner then gave Betances and DeJesus the keys to a car to use that could not be traced to any of them. Betances and DeJesus drove to Brooklyn and fatally shot Rosario. After the hit, Betances drove the car back to Manhattan, reported to petitioner that "everything went fine," returned the car keys, and asked petitioner to tell DeJesus that he would be at the bar the next day. Betances met petitioner and DeJesus at the bar, and Betances slipped $10,000 to DeJesus. The three had drinks to "celebrate" the successful hit.

Petitioner's statement to the police corroborated many of the details Betances recounted, including that he was approached by Betances at the bar with the job, he brought in DeJesus and he loaned an unregistered car to them. Petitioner also admitted that after the three met in the bar, he saw DeJesus with gloves on cleaning and loading a .45 caliber or .9 millimeter gun. He knew that DeJesus had been paid $10,000 because Betances had offered him the same for doing the job himself.

Petitioner's statement, however, differed somewhat from Betances's testimony. Petitioner said that Betances did not return the car to him that night but, instead, dumped it in the Bronx. Petitioner also admitted that the day after the murder, he discussed the disposal of the

7

gun with DeJesus and went to check on the car where it had been left. He said that DeJesus paid him $1,000 or $2,000, but he claimed that the money was reimbursement for the car because it had been stripped.

Given the applicable standard of review—that *any* rational juror could have found the essential elements of the crime—the few discrepancies between Betances's testimony and petitioner's statement do not defeat the sufficiency of the evidence. On habeas review, to the extent that these different versions support conflicting inferences, the Court must presume that any conflicts were resolved in the prosecution's favor. In this particular case, both versions are consistent with a reasonable juror finding petitioner guilty. Indeed, even if the payment was merely reimbursement for the destroyed car, the evidence clearly supports the inference that petitioner actively engaged in various aspects of the planning and execution of the murder with the intent to kill Rosario. Thus, the Appellate Division's affirmance was not contrary to or an unreasonable application of any federal law.

C. Summation Comments

Petitioner's intent was the crucial issue in the case. In closing, defense counsel argued that none of petitioner's actions demonstrated that he had the requisite intent to kill. He was charged with intentionally murdering Rosario—a person he had never met, whose house he never been to, with a gun he had never held—merely for having loaned his car to Betances (Tr. 554-55.) Counsel further argued that "even if someone assists or gives aid to somebody who is going to do a murder, that's not murder. Murder is intending to cause somebody's death. We're in this together, me and you. We're gonna kill somebody." (Tr. 579.) To counter, the prosecutor presented various analogies to illustrate the concept of liability as an accessory. She argued that

8

petitioner was part of a three-ply rope, each strand of which was necessary to accomplish the murder (Tr. 582); that petitioner was like the clergyman necessary to "marry" the parties to carry out the murder (Tr. 603-04); and that petitioner was like the match necessary to ignite a stick of dynamite (Tr. 605). She also reminded the jury of two illustrations she gave during voir dire regarding joint accountability: (1) that "the one person that scores the touch down is not the only person that gets credit for the whole team's point" (Tr. 583); and (2) that when her younger son wanted to buy beer and her older son gave him money, a car, and told him where to go, both were accountable. (Tr. 583-84.)

Petitioner contends that these summation comments addressing accessorial liability rendered his trial unfair. Even if "undesirable" or "universally condemned," however, comments by a prosecutor do not amount to constitutional error warranting habeas relief unless they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citations omitted). To warrant reversal, a petitioner must have been prejudiced by the comments, and in assessing prejudice, the Court must consider "the severity of the misconduct[,] the measures adopted to cure the misconduct[,] and the certainty of conviction absent the improper statements." Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam)).

On their face, the prosecutor's comments were fair response to defense counsel's arguments that petitioner's participation, if any, did not amount to acting in concert with the intent to kill Rosario. Moreover, even if they were improper, the effect of the remarks was cured; defense counsel objected to each of the analogies and the two illustrations, and the judge reminded the jury each time that the court would instruct it on the law. In any case, given the

strength of the evidence against him, including his own confession, petitioner could not have been prejudiced by the prosecutor's remarks.

D. Accessorial Liability Charge

The Supreme Court has made clear that to warrant habeas relief, a challenged jury instruction must be "not merely . . . undesirable, erroneous, or even 'universally condemned,'" but must also "violate some right that was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). An instruction, even if faulty, must "so infect[] the entire trial that the resulting conviction violates due process." Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) (quoting Cupp, 414 U.S. at 147); accord DelValle v. Armstrong, 306 F.3d 1197, 1200-01 (2d Cir. 2002).

With respect to accessorial liability and the requisite intent, the trial court instructed the jury:

> the mere presence of a person at the scene of an alleged crime is not sufficient for you to find that he was acting in concert with anyone else, nor does it mean that he is guilty of any crime. The [P]eople must prove that the defendant acted with the mental culpability required for the commission of the crime alleged. The People must prove the defendant acted knowingly or intentionally and intended that such conduct be performed. . . . It is, therefore, a question of fact for you, the jury, to determine whether the People have proven beyond a reasonable doubt that the defendant participated in a common criminal purpose and design and with common criminal intent with other people in the commission of the crime charged.

(Tr. 630-31.) Citing Section 20.00 of New York Penal Law, the trial court further instructed the jury that:

> [w]hen one person engages in conduct which constitutes an offense another person is criminally liable for such conduct when acting

10

> with the mental culpability required for the commission thereof, he solicits, requests, commands, and importunes, or intentionally aids such person to engage in such conduct. Under this law, the defendant Juan Delphin would be criminally liable for the conduct of the defendant Pedro DeJesus provided the People prove to your satisfaction beyond a reasonable doubt two essential elements of such liability required by such law:
>
> One, as the first essential element, the People must prove the defendant . . . acted with a mental culpability required for the commission of the crime of murder. You will recall that in the defining [of] that crime, I instructed you that the People must prove as an essential element of that crime that the defendant acted intentionally or knowingly. Therefore, before defendant . . . can be criminally liable [for] the conduct of Pedro DeJesus, the People must prove the defendant . . . in fact intended that such conduct be performed.
>
> Two, as a second essential element, the People must prove that defendant . . . solicited, commanded, importuned, or intentionally aided . . . Pedro DeJesus in the commission of the . . . murder. Bear in mind it is not sufficient for [the] People [to] establish merely who defendant . . . associated with . . . or that the defendant . . . was present at the time defendant Pedro DeJesus committed the conduct alleged to constitute the crime of murder.

(Tr. 633-35.) The trial judge, however, twice denied defense counsel's request to charge the jury specifically that mere presence when the crime was "discussed or planned," as opposed to presence at the time Rosario was shot, was also not sufficient for criminal liability to attach. Petitioner contends that based on the charge the trial judge gave, the jury could have concluded that mere presence at the time Rosario was shot would not be sufficient to hold him criminally liable, but that mere presence during the conversation in which the crime was planned—conduct petitioner did engage in—was enough.

The Court disagrees. Considering the charge in its entirety, the jury was fully apprised that to hold petitioner criminally liable, it was required to find that petitioner *participated* in the commission of the crime *with the intent to kill* Rosario. The trial judge emphasized that mere

11

*association* with DeJesus or *presence* at the time of the conduct constituting the murder was not enough. Further, defense counsel's concern that the jury might find petitioner guilty as an accessory because he *intended to loan* his car to the venture but did not *intend to kill* Rosario was adequately addressed by the judge's instructions, referencing Section 20.00 of the New York Penal Law, that the jury was required to find that petitioner acted with the mental culpability required for "murder," which the judge defined as "the intent to cause the death of" Rosario. (Tr. 634, 632, 647.) Thus, the court's charge on accessorial liability did not give rise to a due process violation, and the state court's rejection of this claim as without merit was neither not contrary to, nor an unreasonable application of, Supreme Court precedent.

E. Ineffective Assistance of Appellate Counsel

Petitioner claims that appellate counsel was ineffective for failing to challenge the admission of his confession. To demonstrate constitutionally ineffective assistance, petitioner must show (1) that counsel's performance "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that petitioner was prejudiced by the deficient performance, id. at 692. To satisfy the first prong, appellate counsel's failure to raise a non-frivolous claim is not enough. Indeed, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1993). Moreover, because petitioner's claim was raised in state court and rejected on the merits, relief cannot be granted unless the Appellate Division's application of Strickland was objectively unreasonable. Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004) (citing Bell v. Cone, 535 U.S. 685, 698-99 (2002)). Petitioner cannot meet these exacting requirements.

A review of the record makes clear that petitioner's challenge to the voluntariness of his confession is utterly meritless, and counsel's omission of the argument more than reasonable. Petitioner contends that his statement should not have been admitted because he was misled by the police into thinking that he would receive leniency in exchange for his cooperation. This question was explored at length prior to trial, and the record fully supports the state court's conclusion that petitioner's waiver of his Miranda rights was voluntary.

Prior to giving his statement to the police, petitioner was advised of his Miranda rights in Spanish and signed a pre-printed Miranda waiver in Spanish. The circumstances surrounding petitioner's confession were the subject of a pre-trial Huntley hearing on June 27, 2001. Thereafter, petitioner's counsel moved to re-open the Huntley hearing based on information he discovered in a police report indicating that detectives may have enlisted the help of Betances's wife to secure petitioner's cooperation. The motion was granted, and the hearing was re-opened on September 20, 2001. Detective William Peppy testified that he interviewed petitioner in March of 1999 together with Assistant United States Attorney Cici Scott as part of a joint federal and state task force investigation. At the time, petitioner was in a New Jersey state prison. Detective Peppy told him that Betances was cooperating, and petitioner indicated that he wanted to speak to Betances's wife before he gave a statement. Detective Peppy contacted Betances's wife the next day about speaking with petitioner, but when he informed AUSA Scott that he had contacted her, AUSA Scott directed him not to coordinate any discussions between the two of them. The next time Detective Peppy interviewed petitioner, sometime before petitioner gave his October 5, 1999 statement, he made no assurances that petitioner could benefit from cooperating. Rather, Detective Peppy told petitioner that he could not make any promises and that all he could do was relay any information petitioner gave him to the prosecutor. Counsel

then sought to continue the hearing to further explore whether AUSA Scott made any promises to petitioner.

At the next court appearance, petitioner's counsel formally rested without calling AUSA Scott. Counsel indicated to the court that he had discussed the issue with AUSA Scott, and there was no need to introduce her testimony on voluntariness. As petitioner's appellate counsel noted in her affirmation in response to the application for a writ of error coram nobis, counsel implicitly acknowledged that there were no further grounds for questioning whether improper promises were made to petitioner in exchange for his statement. Nothing in the record supports petitioner's assertion that he was misled to believe that he would receive leniency. Accordingly, the state court's denial of petitioner's ineffective assistance of appellate counsel claim was neither contrary to nor an unreasonable application of Strickland.

F. Admonishments to the Jury

Petitioner reasserts his claim that the trial court erred by twice sending the deliberating jurors home without the required admonishments. As noted above, this claim was rejected by the state court on appeal as unpreserved, and petitioner has not advanced grounds that would permit federal habeas review of this procedurally barred claim.

In any case, petitioner's claim rests entirely on state procedural law. Even though the court shortened the statutory admonishments set forth in New York Criminal Procedure Law § 270.40 when instructing the jury regarding discussions amongst themselves or with others before recesses and during deliberations, the court's preliminary instructions to the jury conformed with the statute. (See Tr. 344-48.) Those instructions, together with the trial judge's repeated, albeit abridged, reminders adequately apprised the jurors of their obligations.

14

Accordingly, no federal due process violation occurred. Archer v. Connell, No. 06-CV-2961, 2008 WL 434266, *12 (E.D.N.Y. Feb. 14, 2008) (no due process violation "provided that the court's instructions to the jury during its preliminary instructions and throughout the trial 'adequately conveyed to the jury its function, duties and conduct.'") (internal citations omitted).

## Conclusion

For the reasons stated above, the application for a writ of habeas corpus is denied, and the petition is dismissed. A certificate of appealability will not issue. In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
May 24, 2010

                                                s/ Judge Raymond J. Dearie

                                                RAYMOND J. DEARIE
                                                United States District Judge